UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| DAVID ELIASON, an individual; and 1141 LLC, a South Dakota Limited Liability Company,<br><br>　　　　　　Plaintiffs,<br><br>vs.<br><br>CITY OF RAPID CITY, a South Dakota Municipality,<br><br>　　　　　　Defendant. | CIV. 17-5082-JLV<br><br><br><br>ORDER |

Plaintiffs David Eliason and 1141 LLC filed this action against defendant City of Rapid City. The verified complaint alleges constitutional violations and seeks various forms of relief. (Docket 1). Plaintiffs filed a motion for a preliminary injunction based on three arguments claiming violations of the First Amendment. (Docket 14). Plaintiffs seek to open and operate a retail store the City would regulate as a "sexually oriented business" based on the store's inventory. Id. at p. 4. Defendant denied plaintiffs the necessary permit for operation. Id. at p. 6. Because some factual issues were embedded in the preliminary injunction motion, the court entered a briefing schedule that provided a discrete time period for discovery. (Docket 18). The court held a hearing on plaintiffs' motion. (Docket 22). Based on the analysis set forth below, the court grants plaintiffs' motion.

## BACKGROUND

In April of 2017, David Eliason met with Vicki Fisher of the Rapid City Community Planning and Development Services Department about opening his business. (Docket 1 at pp. 11-12). They specifically discussed where Mr. Eliason could run a store that the city would regulate as a "sexually oriented business." Id. at p. 12. Plaintiffs intend to name the business they seek to open "Dick & Jane's Naughty Spot" or "Dick & Jane's Super Spot." Id. at p. 10. The business would sell videos and magazines with sexual content.[1] Id. at p. 11. Under Rapid City Municipal Code ("RCMC" or "City Code" or "ordinance"), sexually oriented businesses include adult-only bookstores, adult novelty shops and adult video stores. RCMC § 17.50.186(C). The ordinance states the purpose of regulating these businesses is "to promote the health, safety and general welfare of the citizens of the city, and to establish reasonable and uniform regulations to prevent the concentration of sexually oriented businesses within the city." § 17.50.186(A).

Mr. Eliason, along with his attorney, met with Ms. Fisher and other Rapid City employees in May 2017. (Docket 1 at p. 12). The City employees indicated Mr. Eliason could likely operate his sexually oriented business on Deadwood Avenue. Id. During the meeting, the Deadwood Avenue Business

---

[1]It would sell a variety of other pieces of retail: "tiaras, sashes, party items, gift bags, honeymoon items and more; lingerie items including corsets, stockings, intimate wear, and undergarments for both men and women; post-mastectomy items; shoes for use with costumes, dress up, dancing and more, including platforms, stilettos, and more; lotions, oils, and lubricants for skin care, massage, intimacy, and more; adult-themed novelties and sexual aids[.]" Id. at pp. 10-11.

Park was suggested as a viable location not prohibited by the City Code, specifically RCMC § 17.50.186(D). (Docket 1 at p. 12). RCMC § 17.50.186(D) prohibits sexually oriented businesses from operating within 1,000 feet of various facilities such as churches, parks and schools. One category of facilities included in § 17.50.186(D) is defined as follows:

> A public or private educational facility including but not limited to child day care facilities, nursery schools, preschools, kindergartens, elementary schools, private schools, intermediate schools, junior high schools, middle schools, high schools, vocational schools, secondary schools, continuation schools, special education schools, junior colleges, and universities; school includes the school grounds, but does not include facilities used primarily for another purpose and only incidentally as a school[.]

RCMC § 17.50.186(D)(1)(b).

Following his meetings with City employees, Mr. Eliason obtained a leasehold interest in a piece of real property at 1141 Deadwood Avenue in Rapid City. (Docket 1 at p. 12). The property is in one of the City's general commercial zoning districts. Id. at p. 13. The City Code provides, "[a]ny sexually oriented business lawfully operating in a location permitted by this section shall be classified as a conditional use, and authorized by § 17.54.030." RCMC § 17.50.186(E).

Working with Renner Associates LLC, Mr. Eliason arranged the materials necessary to apply to the Rapid City Planning Commission ("the Planning Commission") for a conditional use permit. (Docket 1 at p. 13). RCMC § 17.54.030 sets forth the procedures and criteria the Planning Commission uses for deciding whether to issue a conditional use permit. The criteria the Planning Commission must consider relate to building design, landscaping,

parking, signage, public utilities and other matters. RCMC § 17.54.030(E)(1)-(12). The Planning Commission must also determine whether the requirements in § 17.50.186 are met.

In order to secure a conditional use permit, Mr. Eliason and Renner Associates submitted an application for development review to the Planning Commission in July 2017. (Dockets 1 at p. 13 & 1-5). On August 24, 2017, the Planning Commission approved the conditional use permit. (Dockets 1 at pp. 13-14, 1-6 & 1-7). Before voting to approve the permit, the Planning Commission considered whether the proposed business would be in compliance with § 17.50.186(D). (Exhibit 102 at p. 14).

Under § 17.54.030(F), the Planning Commission's decision was appealed to the Rapid City Common Council ("Common Council" or "City Council") by BHT,[2] a martial arts studio in the area of the location of Mr. Eliason's planned business. (Docket 1 at p. 14). Among other things, BHT has classes teaching martial arts to people as young as age four. (Docket 1-8 at p. 4). BHT argued in its appeal that Mr. Eliason's business should not receive a conditional use permit because BHT, which is within 1,000 feet of Mr. Eliason's proposed location, is an "educational facility" under § 17.50.186(D). Id. at pp. 1-10; (Docket 1 at p. 15). Mr. Eliason filed a response contending BHT should not be viewed as an "educational facility." (Docket 1-9).

---

[2]Plaintiffs call the business that appealed "the Buckinghams," which is short for "Black Hills Taekwondo LLC, Mike Buckingham, and Robin Buckingham d/b/a Buckingham's ATA Black Belt Academy." (Docket 1 at p. 14). Defendant refers to the business as "Karate for Kids." (Docket 19 at p. 3). The court calls the business "BHT."

On September 18, 2017, Carla Cushman, an Assistant City Attorney in the Office of the City Attorney, wrote a legal memorandum to the Common Council on whether BHT was an educational facility. (Docket 1-10). The memorandum concluded BHT was not an educational facility, stating "Karate for Kids is not an educational facility as contemplated by the sexually-oriented business ordinance, and the 1000 foot buffer zone should not be applied to this situation to deny the [conditional use permit.]" Id. at p. 4. The memorandum provided several grounds for its conclusion: BHT is not regulated by any government as a school; the limited extent to which BHT's purpose is educational; other uses of the term "educational facility" in the City Code; the non-permanent nature of commercial enterprises such as BHT; and the limited frequency and duration of a student's visits to BHT. Id. at pp. 3-4.

On the same date as the City Attorney's memorandum, September 18, 2017, and at a meeting with extensive public input, the Common Council voted to deny Mr. Eliason's conditional use permit in a 6-4 decision. (Dockets 1 at p. 15 & 1-12 at p. 14); (Exhibit 103).

After the Common Council's action, Mr. Eliason met with Fletcher Lacock of the Planning and Development Services Department and Ms. Cushman on September 22, 2017. (Docket 1 at p. 16). They discussed other potential locations for Mr. Eliason's business, but no one at the meeting identified an alternative location in compliance with the City Code. Id. Mr. Eliason and City officials explored whether he could modify his proposed business so it would not be regulated as a sexually oriented business. Id.; (Docket 1-13).

Then plaintiffs filed this lawsuit on October 18, 2017. (Docket 1).

## ANALYSIS

"A district court's decision to issue a preliminary injunction 'depends upon a flexible consideration of (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other interested parties; (3) the probability that the moving party would succeed on the merits; and (4) the effect on the public interest.' " Richland/Wilkin Joint Powers Auth. v. United States Army Corps of Engineers, 826 F.3d 1030, 1036 (8th Cir. 2016) (internal quotation marks omitted) (quoting Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 729 n.3 (8th Cir. 2008) (en banc)) (citing Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc)). These are the Dataphase factors.

"A preliminary injunction is an extraordinary remedy, and the burden of establishing the propriety of an injunction is on the movant." Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003) (internal citation omitted). "No single factor is dispositive, as the district court must balance all factors to determine whether the injunction should issue." Lankford v. Sherman, 451 F.3d 496, 503 (8th Cir. 2006). "In deciding whether to grant a preliminary injunction, likelihood of success on the merits is most significant." Laclede Gas Co. v. St. Charles Cty., Mo., 713 F.3d 413, 419-20 (8th Cir. 2013) (internal quotation marks omitted). The court begins with the third factor, success on the merits.

**I. Probability movant will succeed on the merits**

Before evaluating this issue, the court must decide what standard should apply to determine plaintiffs' probability of success on the merits. The first option is the "fair chance" standard adopted in Dataphase, 640 F.2d at 113-14, and second is the "likely to prevail on the merits" standard adopted in Planned Parenthood, 530 F.3d at 732-33.

A party seeking to enjoin government action based on a presumptively reasoned democratic process must make a threshold showing that it is "likely to prevail on the merits." Id. at 733. The United States Court of Appeals for the Eighth Circuit held this "more rigorous standard 'reflects the idea that governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly.' " Id. at 732 (quoting Able v. United States, 44 F.3d 128, 131 (2d Cir. 1995) (per curiam)). The Planned Parenthood court explained district courts should employ "the familiar 'fair chance of prevailing' test where a preliminary injunction is sought to enjoin something other than government action based on presumptively reasoned democratic processes." Id. After noting that only a state statute was before it in Planned Parenthood, the Eighth Circuit endorsed the Second Circuit's analysis in determining "to what extent the challenged action represents 'the full play of the democratic process[,]' " in cases where a preliminary injunction is sought to enjoin city ordinances. Id. at n.6. (quoting Able, 44 F.3d at 131-32).

Based on defendant's representations about the City's process of adopting § 17.50.186, the ordinance sufficiently represents "the full play of the democratic process[.]" Id. Defendant explains a committee created by the Rapid City Mayor worked with the City Attorney's Office to draft the ordinance. (Docket 19 at p. 1). The committee reviewed comparable statutes and presented § 17.50.186 to the City Council, which had a reading on the ordinance in June 2002 and passed it in July 2002. Id. When the buffer zone was changed from 400 to 1,000 feet, the change was presented to the City Council for a reading and passed in October 2003. Id. at p. 2. The coordination between the Mayor's Office, City Attorney's Office and the City Council sufficiently embodies "the full play of the democratic process[.]" See Planned Parenthood, 530 F.3d at 732. Plaintiffs must show they are likely to prevail on the merits.

Plaintiffs argue RCMC § 17.50.186 is unconstitutional because it violates the First Amendment in three distinct ways.[3] (Docket 17 at p. 2). Plaintiffs assert each challenge includes a facial and as-applied component. Id. First, plaintiffs allege the City Code imposes an unconstitutional prior restraint on their First Amendment rights because they cannot open their business without a conditional use permit. Id. Second, plaintiffs take the position the definition of "educational facility" at § 17.50.186(D)(1)(b) is unconstitutionally vague.

---

[3]Initially, plaintiffs failed to comply with SDCL § 21-24-8, which requires notice to the South Dakota Attorney General when launching a constitutional challenge to an ordinance. (Docket 19 at pp. 6-7). Prior to the hearing on their preliminary injunction motion, plaintiffs complied with SDCL § 21-24-8. (Docket 21). The Attorney General declined the opportunity to participate in this litigation. (Docket 21-2).

(Docket 17 at p. 2). And third, plaintiffs claim the ordinance fails to provide sufficient alternative avenues for their First Amendment expression. Id.

At the outset, the court finds plaintiffs correctly claim they seek to engage in expression the First Amendment protects. The City does not dispute this.

The First Amendment provides: "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. "The amendment applies to state and local governments through the Fourteenth Amendment." Passions Video, Inc. v. Nixon, 458 F.3d 837, 840 (8th Cir. 2006) (citing Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n, 447 U.S. 557, 561 (1980)). "Sexual expression which is indecent but not obscene is protected by the First Amendment[.]" Sable Comm'ns of California, Inc. v. F.C.C., 492 U.S. 115, 126 (1989); see also FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 224 (1990) (plurality opinion) (collecting cases involving bookstores and theaters). "Although one may find sexually explicit material tasteless and even immoral, it is constitutionally protected so long as it is not obscene." Passions, 458 F.3d at 840 (citing United States v. Playboy Entm't Group, Inc., 529 U.S. 803, 811 (2000)).

The court now turns to plaintiffs' prior restraint argument.

### a. Prior restraint

"First Amendment activities generally may be restricted by a zoning ordinance that contains 'content-neutral' regulations governing the time, place, and manner of expression, so long as the ordinance is designed to serve a

substantial governmental interest and does not unreasonably limit alternative avenues of communication." Blue Moon Entertainment, LLC v. City of Bates City, Mo., 441 F.3d 561, 565 (8th Cir. 2006) (quoting City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 47 (1986)). "If, however, the ordinance requires that an individual obtain a license or permit prior to engaging in the protected activity, then the licensing scheme is analyzed as a 'prior restraint' on the activity." Id. (quoting FW/PBS, 493 U.S. at 223 (plurality opinion)).

Plaintiffs' verified complaint states, "[i]t is the official policy and custom of Rapid City to require that a sexually oriented business acquire approval as a conditional use pursuant to RCMC § 17.54.030 prior to opening or operating." (Docket 1 at p. 7). The memorandum supporting plaintiffs' preliminary injunction motion reaffirms this fact: "RCMC § 17.50.186(E) requires a 'Sexually Oriented Business' to obtain conditional use approval under RCMC § 17.54.030." (Docket 17 at p. 3).

As the court noted above, § 17.50.186(E) states: "Any sexually oriented business lawfully operating in a location permitted by this section shall be classified as a conditional use, and authorized by § 17.54.030." Defendant argues there is no prior restraint and the court should view the sexually oriented business ordinance as " 'content-neutral' regulations governing the time, place, and manner of expression[.]" See Blue Moon, 441 F.3d at 565; (Docket 19 at p. 16). Defendant contends § 17.50.186(E) shows there is no prior restraint because of the word "shall." (Docket 19 at pp. 15-16). This argument is unconvincing because, despite using "shall," the City Code still

10

requires Mr. Eliason's retail enterprise to meet the sexually oriented business ordinance in § 17.50.186 and the conditional use requirements in § 17.54.030. Plaintiffs' point is those barriers prevent expression before it happens. And they are correct.

The legal memorandum Assistant City Attorney Cushman produced confirms a sexually oriented business may not open and operate until it obtains a conditional use permit. (Docket 1-10). The memorandum explains that "[t]he zoning code regulates sexually oriented businesses (SOBs) in RCMC 17.50.186 and requires a conditional use permit for all such businesses. . . . In these types of situations, individuals are directed to obtain the [conditional use permit] before obtaining a business license." Id. at p. 1, n.1.

In Blue Moon, the Eighth Circuit analyzed a comparable municipal code and how it related to an exotic dancing club. The court stated: "Section 406 of the Bates City Municipal Code requires an adult business to obtain a conditional use permit prior to engaging in a protected activity, and, therefore, it is a prior restraint[.]" Blue Moon, 441 F.3d at 565. Based on the Blue Moon case, the City Attorney's memorandum and the interplay between § 17.50.186 and § 17.54.030, plaintiffs correctly argue the City Code imposes a prior restraint on them.

"A prior restraint on the exercise of First Amendment rights bears a 'heavy presumption against its constitutional validity.'" Douglas v. Brownell, 88 F.3d 1511, 1521 (8th Cir. 1996) (quoting Vance v. Universal Amusement Co., 445 U.S. 308, 317 (1980) (per curiam)). "[T]he mere existence of the

licensor's unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own speech, even if the discretion and power are never actually abused." <u>City of Lakewood v. Plain Dealer Publishing Co.</u>, 486 U.S. 750, 757 (1988). For a prior restraint to be consistent with the First Amendment, two requirements must be met. First, the "licensing scheme generally must provide narrow, objective, and definite standards to guide the licensing authority[.]" <u>Blue Moon</u>, 441 F.3d at 565. Second, it "may only impose a restraint for a specified and reasonable period, and must provide for prompt judicial review." <u>Id.</u> The overarching idea is the scheme "must not vest unbridled discretion in the hands of a government official." <u>Id.</u> Challenges to prior restraints may be facial or as-applied. <u>See Id.</u> (analyzing a facial challenge); <u>Taucher v. Born</u>, 53 F. Supp. 2d 464, 481-82 (D.D.C. 1999) (finding an as-applied violation). The court starts by evaluating plaintiffs' as-applied argument.

## 1. Standards

The ordinance applied to deny plaintiffs a conditional use permit "must provide narrow, objective, and definite standards to guide the licensing authority[.]" <u>Blue Moon</u>, 441 F.3d at 565; <u>see</u> <u>Lady J. Lingerie, Inc. v. City of Jacksonville</u>, 176 F.3d 1358, 1362 (11th Cir. 1999) ("Standards must be *precise* and *objective*.") (emphasis in original) (collecting cases). "[S]uch standards can be provided through 'established practice' if absent from the text of the code." <u>Advantage Media, L.L.C. v. City of Eden Prairie</u>, 456 F.3d 793,

804 (8th Cir. 2006) (quoting <u>Forsyth County, Georgia v. Nationalist Movement</u>, 505 U.S. 123, 133 (1992)).

The record from the Common Council meeting where the Council denied plaintiffs a conditional use permit establishes that § 17.50.186(D)(1)(b), which defines "educational facility," is central to this inquiry. (Exhibit 103 at pp. 44-68). As explained earlier, § 17.50.186(D) prohibits sexually oriented businesses from operating within 1,000 feet of educational facilities, and § 17.50.186(D)(1)(b) defines educational facility:

> A public or private educational facility including but not limited to child day care facilities, nursery schools, preschools, kindergartens, elementary schools, private schools, intermediate schools, junior high schools, middle schools, high schools, vocational schools, secondary schools, continuation schools, special education schools, junior colleges, and universities; school includes the school grounds, but does not include facilities used primarily for another purpose and only incidentally as a school[.]

RCMC § 17.50.186(D)(1)(b).

Members of the City Council grappled with what constitutes an educational facility and whether BHT fits that definition. (Exhibit 103 at pp. 44-68). Legal counsel for BHT and several members of the public addressed the City Council prior to its vote. <u>Id.</u> at pp. 2-44. These remarks heavily focused on the protection of children and what each speaker viewed as the ordinance's purpose. <u>Id.</u>

The first Councilmember to speak highlighted that the definition in § 17.50.186(D)(1)(b) is not exhaustive, noting "[t]he ordinance says a sexually oriented business should not be permitted to operate within a thousand feet, and we have this list. We talked about this list of schools, and it starts out like

13

this. 'A public or private educational facility, including, but not limited to.'"

Id. at pp. 45-46. In considering why the "ordinance [was] put in place in the first place[,]" this Councilmember, who voted to deny plaintiffs' conditional use permit, stated "[t]he intention of this to me is for kids. It would seem like it's for kids." Id. at p. 46. Referring to the City Attorney's legal advice, this Councilmember commented, "I do want to say our City Attorney is trying to go clearly as best they can by the law and they don't read into the intention and all of that like we will up here. But I think the spirit of the law in this is upheld." Id. at p. 47.

Another Councilmember who voted against issuing the conditional use permit explained, "I want to be on the side that says this is not good for society." Id. at p. 49. In discussing his view on the rationale underlying this ordinance's regulation of sexually oriented businesses, the Councilmember stated:

> So the reality is, there are always going to be people who choose the wrong path and that has started from the very beginning of time starting with the apple, right? So, but that doesn't mean that we can't regulate, that doesn't mean that we can't make sure that our community reflects the moral fortitude of all of the people— let's just say the majority of the people in this city. And that's what this adult oriented business—or this ordinance was about. So I'm going to stand with the side in my opinion that is right.

Id. at pp. 49-50. Addressing the members of the public at the meeting, this Councilmember went on to say, "I want you all to know that we have to do better at getting people into office who will make these laws tougher. The way to get rid of these is to make sure that we have the right people in office that are appointing the right judges in the right places that make the right decisions

14

that reflect our moral values, and that goes all the way up to the Supreme Court." Id. at p. 50.

A third Councilmember voting to deny plaintiffs' conditional use permit focused on her understanding of the ordinance's intent: "And I also believed when I read the ordinance that the intent of that ordinance, just like Mr. Biggs[4] said, was not that it had to fall in your[5] educational. The intent was to keep the adult oriented businesses away from our children and from my grandchildren. And that's important to me." Id. at p. 51.

These remarks are important to this court's constitutional inquiry because the court has to answer the following question: was the standard of requiring plaintiffs' sexually oriented business to be over 1,000 feet away from an educational facility applied in a "narrow, objective, and definite" manner? See Blue Moon, 441 F.3d at 565. This question does not involve weighing the moral values of any statements made by members of the public to the City Council or any Councilmember's statements. The court's duty is to read the ordinance's definition of educational facility, assess defendant's application of it to plaintiffs and ask whether the ordinance "provide[d] narrow, objective, and definite standards to guide the licensing authority[.]" See id.

---

[4]Mark Biggs is one of the several members of the public who addressed the City Council before the vote. Id. at pp. 32-34. Mr. Biggs stated he participated in City Council meetings where the sexually oriented business ordinance was crafted. Id. at p. 32. He expressed concern about the number of registered sex offenders in Rapid City, and based on that statistic, he stated the ordinance had two purposes: "to protect the children[,] and the idea was— behind it to keep—keep these businesses as far [away] as we could from children and any of the functions that they would go to." Id. at p. 34.

[5]This language is taken from the transcript entered into evidence.

As applied to plaintiffs, the court finds the definition of educational facility in § 17.50.186(D)(1)(b) is not sufficiently "narrow, objective, and definite[.]" See Blue Moon, 441 F.3d at 565. Further, the evidence does not support finding adequate standards are part of the City's "established practice[.]" See Advantage Media, 456 F.3d at 804.

One basis for this determination is the opposite conclusions that the City Attorney and City Council reached on whether BHT is an educational facility. The memorandum[6] from the City Attorney to the City Council thoroughly considered the scope of § 17.50.186(D)(1)(b). (Docket 1-10). Addressing how government entities view schools and businesses, the memorandum noted:

> The state and federal governments do not consider commercial businesses like Karate for Kids to be educational facilities that fall within their regulations and oversight. . . . For example, state regulations require school attendance for students in primary and secondary school, with limited exceptions. . . . Any educational component of Karate for Kids' programming is not mandated, and the business could remove its educational components at their own discretion.

Id. at p. 3. The memorandum also considered BHT's purpose, finding:

> While the ordinance is a little confusing in the way it mixes the term schools and educational facilities, it would read the ordinance far too broadly to conclude that businesses which are only

_____

[6]RCMC § 2.16.010 created the Office of the City Attorney, and § 2.16.020 established the Office's duties, including "furnish[ing] an opinion upon any matter relating to the affairs of the city" when directed by the Common Council or any city officer. The memorandum states a position on behalf of "staff[.]" (Docket 1-10 at p. 1) ("As I discuss in detail below, staff do not believe Karate for Kids is an educational facility[.]"); see also RCMC § 2.16.030 ("The Assistant City Attorney shall have the authority to perform all the duties of the City Attorney in the absence of the City Attorney or at the request of the City Attorney.").

incidentally educational and which are used primarily for another purpose are "educational facilities" that require a buffer zone. If that is the case, then any business which happens to offer a class may claim that it is an "educational facility" within the ordinance, and certainly any business that works with children could make the same claim.

Id. Turning to the use of "educational facility" in other portions of the City

Code, the memorandum highlighted:

> The descriptions in the zoning code for residential neighborhoods discuss residential uses as well as "noncommercial, recreation, religious and *educational facilities*" that "are normally required to provide a balanced and attractive residential area." *RCMC 17.44.010; see also RCMC 17.10.010, 17.12.010*. In those zoning districts, family day care centers, elementary and high schools, and child care centers are permitted and conditional uses. A commercial enterprise such as Karate for Kids is not allowed in these residential zoning districts.

Id. (emphasis in original). The City Attorney's memorandum went on to explain

that "[t]he types of uses that require the 1000 foot buffer are uses which are

largely permanent in nature and which cannot possibly move to another

location if an unwanted neighbor moves in." Id. at pp. 3-4. As the court noted

above, § 17.50.186(D) prohibits sexually oriented businesses from operating

within 1,000 feet of various facilities such as churches, parks and schools.

Unlike those examples, the memorandum asserts, BHT "could operate within

any number of other commercial buildings in the City." (Docket 1-10 at p. 4).

The memorandum's final point is that "[c]hildren and students attend day care

facilities and schools for a significant length of time, and day care facilities and

schools will likely have children on the site all day for a majority of the year."

Id. In the City Attorney's view, "a child may visit a recreational facility like

Karate for Kids for as little as an hour a week, and it is unlikely that children

are present in the Karate for Kids facility for the lengths of time that schools are occupied by their students." Id.

When the Planning Commission decided to approve plaintiffs' conditional use permit, it considered whether BHT was an educational facility. (Exhibit 102 at p. 14). One member of the Planning Commission remarked, "I'm curious as to how the—the little karate academy around the corner relates. Is that a—is that considered a school or is that a business, or how does that work?" Id. Ms. Fisher of the Rapid City Community Planning and Development Services Department stated, "So that would not be what we would consider a school. That is a sports activity and many of those, whether it be a fitness gym or a karate class, are open to individuals of all ages. So it would not fall with that description of what we would look at for a school." Id.

The City Council reached the opposite conclusion, and its reasoning was distinct from the City Attorney's memorandum especially. As set forth above, when deciding BHT constituted an educational facility, members of the City Council primarily focused on whether their decision would be in the best interests of children in the City and their concern for personal moral values. Id. at pp. 44-68. Absent from the reasoning of some City Councilmembers was the variety of grounds the City Attorney provided for its determination. Although some Councilmembers made remarks about the City Attorney's position, they were cursory. See, e.g., id. at p. 47 ("I do want to say our City Attorney is trying to go clearly as best they can by the law and they don't read into the intention and all of that like we will up here.").

18

Plaintiffs' application for a conditional use permit hinged on the definition of "educational facility" in § 17.50.186(D)(1)(b). The ordinance is written broadly. It relates to "public or private educational facilit[ies]" and provides a non-exhaustive list of example facilities. Id. It does not provide guidance on what other facilities may fall within its scope, other than specifying it "includes the school grounds, but does not include facilities used primarily for another purpose and only incidentally as a school[.]" Id. Because of the way the definition was written, it resulted in Rapid City government entities forming opposite interpretations that they reached by entirely different paths. The court finds this demonstrates that § 17.50.186(D)(1)(b), as applied to plaintiffs, fails to "provide narrow, objective, and definite standards to guide the licensing authority[.]" See Blue Moon, 441 F.3d at 565.

Setting aside the City Attorney's memorandum, the reasons stated by some of the Councilmembers in denying plaintiffs' conditional use permit show § 17.50.186(D)(1)(b) does not sufficiently limit the City Council's discretion. As the court set forth above, the dominant concerns of some Councilmembers were children as well as personal moral and religious values. See supra Section I.a. at pp. 13-15;(Exhibit 103 at pp. 44-68). While many of the enumerated facilities in the ordinance are places where children are present for extended periods of time, several of them are not—specifically, vocational schools, junior colleges and universities. § 17.50.186(D)(1)(b). But because of the broad nature of the definition, Councilmembers found it proper to "read

into the intention" of the City Code. (Exhibit 103 at p. 47). One Councilmember decided interpreting the definition of educational facility entailed choosing "to be on the side that says [plaintiffs' business] is not good for society."[7] Id. at p. 49. Another Councilmember interpreted the definition in § 17.50.186(D)(1)(b) to include "[t]he intent . . . to keep the adult oriented businesses away from our children and from my grandchildren." Id. at p. 51.

Because the definition of "educational facility" was written so broadly, it led to Councilmembers applying their personal moral views instead of the ordinance's terms. If the definition was "narrow, objective, and definite" as Blue Moon requires, it would not result in Councilmembers speculating about the ordinance's underlying rationale—they would simply apply its terms. See Blue Moon, 441 F.3d at 565; see also Lady J., 176 F.3d at 1362 (finding unconstitutional standards that "empower the zoning board to covertly discriminate against adult entertainment establishments under the guise of general 'compatibility' or 'environmental' considerations."). As evidenced by the record some Councilmembers made, the definition of "educational facility" in § 17.50.186(D)(1)(b) fails to "provide the guideposts that check the licensor and

_____

[7]That Councilmember went on to apply his personal religious beliefs, referring to "people who choose the wrong path[,]" which "start[ed] with that apple[.]" Id. This is an allusion to the Book of Genesis in the Old Testament of the Bible, 2 Genesis 16:17, where Adam and Eve eat fruit they were commanded not to eat. Several religious leaders from the community spoke publicly to the City Council before the vote, encouraging it to deny the conditional use permit, (Exhibit 103 at pp. 1-43), which supports the conclusion that this Councilmember is applying a religious belief. Lost in the City Council's deliberation was the First Amendment legal reality that plaintiffs' proposed business is as legitimate a commercial enterprise as BHT or any other retail establishment in the City.

allow courts quickly and easily to determine whether the licensor is discriminating against disfavored speech." See Lakewood, 486 U.S. at 758. The court finds this establishes an additional basis for concluding § 17.50.186(D)(1)(b), as applied to plaintiffs, is an unconstitutional prior restraint.

Based on the analysis above, the court finds no reason to conclude the "heavy presumption against [the] constitutional validity" of prior restraints has been overcome. See Douglas, 88 F.3d at 1521. Because the court finds § 17.50.186(D)(1)(b) is not sufficiently "narrow, objective, and definite," it is not necessary for the court to analyze whether the restraint is imposed "for a specified and reasonable period, and . . . provide[s] for prompt judicial review." See Blue Moon, 441 F.3d at 565. And because the court finds an as-applied First Amendment violation, it need not explore plaintiffs' facial challenge.

### b. Vagueness

The United States Supreme Court explained the rationale for constitutional challenges to vague laws:

> It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute abuts upon sensitive areas of basic First Amendment

21

freedoms, it operates to inhibit the exercise of those freedoms. Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked.

Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972) (internal punctuation and footnotes omitted); see also Kolender v. Lawson, 461 U.S. 352, 357-58 (1983) (holding a law restricting speech is impermissibly vague if it fails to provide fair notice to reasonable persons of what is prohibited, or if it fails to provide reasonably clear guidelines for law enforcement officials, resulting in a "chilling" effect on speech protected by the First Amendment); Village of Hoffman Estates v. Flipside, Hoffman Estates, 455 U.S. 489, 497-99 (1982) (noting that a "more stringent vagueness test should apply" where a law interferes with the right of free speech).

The criteria to evaluate language challenged on vagueness grounds is that of "flexibility and reasonable breadth, rather than meticulous specificity" or "mathematical certainty." Grayned, 408 U.S. at 110. These standards should not be "mechanically applied," but rather should be considered in light of the "nature of the enactment." See Village of Hoffman Estates, 455 U.S. at 498. The City Code "can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." Hill v. Colorado, 530 U.S. 703, 732 (2000).

In evaluating a law that "affect[s] communication protected by the First Amendment," the court may consider a challenge to its facial validity regardless

of whether or not the law is vague as applied if "the statute's deterrent effect on legitimate expression is . . . both real and substantial and if the statute is [not] readily subject to a narrowing construction by the state courts." Young v. American Mini Theatres, Inc., 427 U.S. 50, 59-60 (1976) (internal quotation marks omitted) (citing Erznoznik v. City of Jacksonville, 422 U.S. 205, 216 (1975)).

"A facial challenge to a legislative Act is . . . the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exist under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987). Striking down a law on its face is "strong medicine" which should be employed "with hesitation, and then 'only as a last resort.' " New York v. Ferber, 458 U.S. 747, 769 (1982). The court turns to plaintiffs' as-applied challenge first.

Similar to plaintiffs' prior restraint argument, their vagueness challenge revolves around the definition of "educational facility" in § 17.50.186(D)(1)(b). (Docket 17 at pp. 18-21). Plaintiffs argue the contrast between the interpretations of the City Council on one hand and the City Attorney and Planning Commission on the other supports finding the ordinance unconstitutionally vague. Id. at pp. 19-20. Defendant contends the term is not vague because it "is not an uncommon term" and has a clear definition in Black's Law Dictionary and Webster's Dictionary. (Docket 19 at pp. 25-26).[8]

---

[8]Defendant cites Wolfe v. Village of Brice, Ohio, 37 F. Supp. 2d 1021 (S.D. Ohio 1999), to argue "educational facility" is not vague. (Docket 19 at pp. 27-28). The ordinance challenged in Wolfe has the same definition of

The court finds the definition of "educational facility" in § 17.50.186(D)(1)(b) is unconstitutionally vague as applied to plaintiffs. The court bases this determination primarily on its discussion above on how the broadly written definition resulted in the City Council forming one interpretation and the City Attorney and Planning Commission coming to the opposite conclusion. See supra Section I.a. at pp. 13-18. "In determining whether an ordinance is impermissibly vague, 'courts traditionally have relied on the common usage of statutory language, judicial explanations of its meaning, and *previous applications of the statute to the same or similar conduct.*'" Postscript Enters., Inc. v. Whaley, 658 F.2d 1249, 1254 (8th Cir. 1981) (emphasis added) (quoting Balthazar v. Superior Court, 573 F.2d 698, 700 (1st Cir. 1978)). When Rapid City government entities that are interpreting the same ordinance form irreconcilable views, the ordinance " 'violates the first essential of due process of law,' because citizens 'must necessarily guess at its meaning and differ as to its application.'" United States v. Bamberg, 478 F.3d 934, 937 (8th Cir. 2007) (quoting Connally v. Gen. Constr. Co., 269 U.S. 385, 391 (1926)). The court finds § 17.50.186(D)(1)(b) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." Hill, 530 U.S. at 732.

---

educational facility as § 17.50.186(D)(1)(b). See Wolfe, 37 F. Supp. 2d at 1023 n.2. But there was no vagueness challenge in Wolfe. The court found no constitutional violation based on content neutral time, place and manner analysis. Id. at 1023-24 (citing Renton, 475 U.S. at 41). Wolfe does not apply to the issues here.

The record from the City Council meeting demonstrates the definition of "educational facility" in § 17.50.186(D)(1)(b) "encourages arbitrary and discriminatory enforcement." Hill, 530 U.S. at 732. In its effort to determine whether BHT was an educational facility, several Councilmembers prioritized "keep[ing] the adult oriented businesses away from our children[.]" (Exhibit 103 at p. 51). They inserted their individual moral and religious views to "be on the side that says this is not good for society." Id. at p. 49. These considerations are not in § 17.50.186(D)(1)(b). When the loosely written definition of "educational facility" in § 17.50.186(D)(1)(b) permits interpretation far beyond its terms, it is unconstitutionally vague because it "encourages arbitrary and discriminatory enforcement." Hill, 530 U.S. at 732. The court finds § 17.50.186(D)(1)(b) unconstitutionally vague as applied to plaintiffs. There is no need to rule on plaintiffs' facial challenge to the ordinance.

With respect to plaintiffs' as-applied prior restraint and vagueness challenges to § 17.50.186(D)(1)(b), the court finds plaintiffs are "likely to prevail on the merits[.]" See Planned Parenthood, 530 F.3d at 732-33. Based on this determination, at this stage the court need not analyze plaintiffs' third argument regarding availability of alternative locations.

## II.  Threat of irreparable harm

The next Dataphase factor plaintiffs must show is the threat of irreparable harm. Dataphase, 640 F.2d at 113. "It is well-established that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.' " Powell v. Noble, 798 F.3d 690,

702 (8th Cir. 2015) (quoting <u>Elrod v. Burns</u>, 427 U.S. 347, 373 (1976)).

Plaintiffs satisfy this factor because the court determined they are likely to

prevail on certain First Amendment claims.

## III.  Balance between harm and injury in granting injunction

In the next <u>Dataphase</u> factor, the court must assess the balance between

the alleged irreparable harm and the harm an injunction would inflict on other

parties.  <u>Dataphase</u>, 640 F.2d at 113.  "The balance of equities . . . generally

favors the constitutionally-protected freedom of expression."  <u>Phelps-Roper v.</u>

<u>Nixon</u>, 545 F.3d 685, 690 (8th Cir. 2008), <u>overruled on other grounds by</u>

<u>Phelps-Roper v. City of Manchester, Mo.</u>, 697 F.3d 678, 686 (8th Cir. 2012);

<u>see</u> <u>Traditionalist Am. Knights of Ku Klux Klan v. City of Desloge, Mo.</u>, 914 F.

Supp. 2d 1041, 1045 (E.D. Mo. 2012) (noting this principle was not overruled);

<u>Risky Bus. Novelties & Videos, Inc. v. Cty. of Crow Wing, Minn.</u>, No. CIV. 12-

2947, 2013 WL 1435235, at *8 (D. Minn. Apr. 9, 2013) (same).  Based on the

analysis above finding First Amendment violations, plaintiffs satisfy this factor.

## IV.  Public interest

The final <u>Dataphase</u> factor requires plaintiffs to show an injunction

supports the public interest.  <u>Dataphase</u>, 640 F.2d at 113.  "[T]he

determination of where the public interest lies . . . is dependent on the

determination of the likelihood of success on the merits of the First

Amendment challenge because it is always in the public interest to protect

constitutional rights."  <u>Nixon</u>, 545 F.3d at 690, <u>overruled on other grounds by</u>

<u>Manchester</u>, 697 F.3d at 690; <u>see</u> <u>Tsuruta v. Augustana Univ.</u>, No. 4:15-CV-

04150, 2015 WL 5838602, at *10 (D.S.D. Oct. 7, 2015) (noting this principle was not overruled). This factor is met because the court concluded plaintiffs established they are likely to prevail on certain First Amendment arguments.

## V. Security

Under Rule 65 of the Federal Rules of Civil Procedure, the "court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined[.]" Fed. R. Civ. P. 65(c). "Although [the Eighth Circuit] allow[s] the district court much discretion in setting bond, [it] will reverse [the district court's] order if it abuses that discretion due to some improper purpose, or otherwise fails to require an adequate bond or to make the necessary findings in support of its determinations." <u>Ranchers Cattlemen Action Legal Fund v. U.S. Dep't of Agric.</u>, 566 F. Supp. 2d 995, 1008 (D.S.D. 2008) (alterations in original) (citing <u>Hill v. Xyquad, Inc.</u>, 939 F.2d 627, 632 (8th Cir. 1991)); see <u>Traditionalist Am. Knights of Ku Klux Klan</u>, 914 F. Supp. 2d at 1052.

During the preliminary injunction hearing, plaintiffs requested the court impose no security because it would require them to pay money to exercise First Amendment rights. The City requested security from plaintiffs. It indicated a ruling for plaintiffs could result in a lawsuit against the City by BHT, and the City may pay $100,000 in that event. Because plaintiffs seek to carry out expression the First Amendment protects, and defendant did not provide an adequately substantiated amount for security, the court finds no security is justified. See <u>United Utah Party v. Cox</u>, 268 F. Supp. 3d 1227, 1260

(D. Utah 2017) ("This preliminary injunction enforces fundamental constitutional rights against the government.  Waiving the security requirement best accomplishes the purposes of Rule 65(c)."); Complete Angle, LLC v. City of Clearwater, Fla., 607 F. Supp. 2d 1326, 1335-36 (M.D. Fla. 2009) ("Waiving the bond requirement is particularly appropriate where a plaintiff alleges the infringement of a fundamental constitutional right.") (collecting cases).

### ORDER

Based on the above analysis, it is

ORDERED that plaintiffs' preliminary injunction motion (Docket 14) is granted.

IT IS FURTHER ORDERED that until further order of this court the City, its agents and employees are enjoined from enforcing RCMC § 17.50.186(D)(1)(b) to deny a conditional use permit to plaintiffs for the operation of their business at 1141 Deadwood Avenue, Suite 7, in Rapid City, South Dakota.

IT IS FURTHER ORDERED that plaintiffs need not provide security under Rule 65(c) of the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that a scheduling order will be entered for the resolution of plaintiffs' remaining claims.

Dated January 29, 2018.

BY THE COURT:

JEFFREY L. VIKEN
CHIEF JUDGE

28