UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| DAVID ELIASON, an individual; and 1141 LLC, a South Dakota Limited Liability Company, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF RAPID CITY, a South Dakota Municipality, <br><br> Defendant. | CIV. 17-5082-JLV <br><br><br><br> ORDER |

**INTRODUCTION**

Plaintiffs David Eliason and 1141 LLC brought this civil action under

42 U.S.C. § 1983 challenging portions of the municipal code of Rapid City, South

Dakota, ("the City") relating to the regulation of sexually oriented businesses.

(Docket 1).   The court granted plaintiffs a preliminary injunction and enjoined

the City from denying them the necessary city permit to open a sexually oriented

business, Dick & Jane's Super Spot.   (Docket 24).   Plaintiffs now move for

summary judgment, seeking a permanent injunction, a declaration that portions

of the Rapid City Municipal Code are facially unconstitutional, and damages for

lost profits engendered by the City's permit denial.   (Docket 33).   The City

opposes the motion.   (Docket 45).   For the reasons given below, the court

grants plaintiffs' motion in part and denies it in part.   The court permanently

enjoins the City from enforcing certain sexually oriented business regulations as

to plaintiffs, finds one regulation facially unconstitutional and denies summary judgment as to damages.

## DISCUSSION

### I.  Facts

The following recitation consists of the material facts developed from the plaintiffs' statement of undisputed material facts (Docket 38), plaintiffs' response to those facts (Docket 44), and other evidence in the record where indicated.[1] These facts are "viewed in the light most favorable to the party opposing the motion."  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (quotation omitted).

Mr. Eliason is a South Dakotan in the business of operating sexually-themed retail stores.  (Docket 38 at ¶ 37).   In 2017, he began the process of opening a store in Rapid City, South Dakota, now called "Dick & Jane's Super Spot ("Dick & Jane's").[2]   (Docket 31 at ¶¶ 2 & 4).   The Rapid City Municipal Code ("RCMC") regulates businesses deemed "adult oriented businesses" and "sexually oriented businesses."   <u>See</u> RCMC §§ 5.70, 17.50.186. Plaintiffs intended to sell items which would render the business sexually and adult oriented, including "adult-themed novelties and sexual aids" and "DVD's

---

[1]The court cites to plaintiffs' statement of undisputed material facts where the cited fact is not contested by the City.

[2]Mr. Eliason stated to the Rapid City Common Council he began looking for a business location in Rapid City in 2009.   (Docket 37-13 at p. 11).

[sic] and magazines with sexual themes[.]" (Docket 38 at ¶ 3). No party alleges Dick & Jane's was improperly classified as a sexually or adult oriented business.

In April of 2017, Mr. Eliason met with Vicki Fisher, a City planning official, to express his interest in opening a sexually oriented business. Id. at ¶ 5. Ms. Fisher advised him to meet with a wider array of officials. Id. at ¶ 6. On May 9, Mr. Eliason and his attorney met with four officials, including Carla Cushman, an Assistant City Attorney. Id. at ¶ 7. At that meeting, 1141 Deadwood Avenue was identified as a location which would likely be compliant with City regulations concerning the location of sexually oriented businesses.[3] Id. at ¶¶ 8-10. This location is a strip mall building hosting commercial tenants. (Docket 37-6 at pp. 2-4). On April 17, Mr. Eliason, on behalf of REDE LLC, sent a letter to the owners of 1141 Deadwood Avenue expressing his intent to lease a suite in that building. (Docket 31-1).

On July 26, Mr. Eliason, through project planner Renner Associates, applied for a conditional use permit to open a sexually oriented business as required by City regulations.[4] (Dockets 38 at ¶ 14 & 37-4). City staff members

---

[3]Defendants assert Mr. Eliason "pre-selected" the Deadwood Avenue location before the May 9 meeting, while plaintiffs argue the City officials suggested the location. (Dockets 38 at ¶ 8, 43 at ¶ 3, & 44 at ¶ 8). This dispute has no bearing on the resolution of plaintiffs' summary judgment motion and the court declines to settle it.

[4]In their statement of undisputed material facts, plaintiffs state Mr. Eliason submitted the application on July 28. (Docket 38 at ¶ 14). The application is dated July 26 and a checklist of necessary supporting documentation is dated July 27. (Docket 37-4 at pp. 1-2).

evaluated the application and recommended granting it. (Docket 37-5 at pp. 6-7). Specifically, staff concluded the proposed business complied with City regulations regarding the location of sexually oriented businesses. Id. The Rapid City Planning Commission unanimously approved the application on August 24. (Dockets 38 at ¶ 18 & 37-6 at pp. 10-12).

On August 31, a martial arts studio serving children located less than 1,000 feet from 1141 Deadwood Avenue, Black Hills Taekwondo LLC ("BHT") (also known as "Karate for Kids"), appealed the Planning Commission's approval of Mr. Eliason's conditional use permit. (Dockets 38 at ¶ 21 & 37-7). BHT argued it was an "educational facility" under City regulations. (Docket 37-7 at pp. 2-6). City regulation prohibits sexually oriented businesses from operating within 1,000 feet of an educational facility. RCMC § 17.50.186(D)(1)(b). The Planning Commission specifically considered and rejected the argument BHT would be an educational facility blocking Mr. Eliason's conditional use permit. (Docket 37-12 at pp. 14-15).

The Rapid City Common Council, the municipal legislative body, took up BHT's appeal during its September 18 meeting. (Docket 38 at ¶ 28). Prior to the meeting, Assistant City Attorney Cushman wrote a memorandum to the Common Council concluding BHT was not an educational facility. (Docket 37-10). At the meeting, 15 members of the public—including four leaders of local Christian churches and a representative from the Family Heritage Alliance—urged the Common Council to grant BHT's appeal and deny Mr.

4

Eliason's conditional use permit.[5]   (Docket 37-13 at pp. 18-44).   No member of

the public spoke in favor of denying the appeal.   Following public comment,

some Council members made remarks concerning their religious and moral

opposition to sexually oriented businesses, in addition to the issue of whether

BHT qualified as an educational facility.[6]   Id. at pp. 45-51.   The Common

Council voted 6-4 to grant BHT's appeal.   (Docket 38 at ¶ 30).

As president of REDE LLC, Mr. Eliason executed a five-year lease for suites

9 and 10 of 1141 Deadwood Avenue on September 11.   (Docket 31-2).   On

September 15, Mr. Eliason, on behalf of REDE LLC, assigned the lease to 1141,

LLC ("1141").[7]   After the Common Council denied the conditional use permit,

Mr. Eliason informed his new landlord via e-mail and stated the decision "would

have no impact on the lease" because he would be "modifying the inventory list

---

[5]The Family Heritage Alliance is a group that aims for "South Dakota [to] be a state where God is honored, religious freedom flourishes, families thrive, and life is valued."   Family Heritage Alliance, About the Family Heritage Alliance, available at http://www.familyheritagealliance.org/about-us/ (last visited July 5, 2019).

[6]As the court noted in its order granting plaintiffs a preliminary injunction, the content of Council members' statements during the September 18 meeting is relevant to the question of whether the challenged regulations give City officials excessive discretion in deciding whether to allow businesses to engage in constitutionally protected expressive activities.   Docket 24 at p. 15; see also infra Section III.C.2.

[7]1141 was not incorporated under South Dakota law until October 17. (Docket 41-3).   Furthermore, the landlord did not approve the sublease until January 15, 2018.   (Docket 31-4).   Mr. Eliason states he formed 1141 specifically for his Rapid City retail business.   (Docket 31 at ¶ 7).

and operation to a level that a conditional use permit is not required[.]" (Docket 41-23).

Mr. Eliason and 1141 brought the present suit on October 18, 2017. (Docket 1). Plaintiffs moved for a preliminary injunction enjoining the City from enforcing RCMC § 17.50.186 against them. (Dockets 14 & 17). The court held a hearing on plaintiffs' motion on January 19, 2018. (Docket 22). Two witnesses testified at the hearing and the court received 15 exhibits into evidence. (Dockets 22 & 23). On January 29, the court entered a preliminary injunction enjoining the City from continuing to deny plaintiffs a conditional use permit. (Docket 24).

Dick & Jane's opened for business on February 14, 2018. (Dockets 31 at ¶ 35 & 44 at p. 24). Plaintiffs assert Dick & Jane's could have been open by May 14, 2017, had there been no conditional use permit requirement or had the Common Council not denied the permit on October 14, 2017. (Docket 38 at ¶¶ 38-39). The City vigorously disputes these assertions and argues Dick and Jane's could not have opened earlier than January of 2018. (Dockets 44 at ¶¶ 38-39 & 45 at pp. 10-14). Plaintiffs did not apply for the necessary adult oriented business license—which is distinct from the conditional use permit required to open a sexually oriented business—until February 9, 2018. (Dockets 42-1 & 42-2). The permits were approved on March 1. Id.

## II.    Legal Standards

### A.    Summary judgment

Under Federal Rule of Civil Procedure 56(a), a movant is entitled to summary judgment if the movant can "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   Once the moving party meets its burden, the nonmoving party may not rest on the allegations or denials in the pleadings, but rather must produce affirmative evidence setting forth specific facts showing that a genuine issue of material fact exists.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).   Only disputes over facts which might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Id. at 248.   "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48 (emphasis in original).

If a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate.   Id.   However, the moving party is entitled to judgment as a matter of law if the nonmoving party failed to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In such a case, "there can be 'no genuine issue as to any material fact,' since a

complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

In determining whether summary judgment should issue, the facts and inferences from those facts must be viewed in the light most favorable to the nonmoving party. Matsushita, 475 U.S. at 587-88. The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

### B. Permanent injunction & types of constitutional challenges

"The standard for issuing a preliminary or permanent injunction is essentially the same, excepting one key difference. A permanent injunction requires the moving party to show actual success on the merits[.]" Oglala Sioux Tribe v. C & W Enters., Inc., 542 F.3d 224, 229 (8th Cir. 2008). "If a court finds actual success on the merits, it then considers the following factors in deciding whether to grant a permanent injunction: (1) the threat of irreparable harm to the moving party; (2) the balance of harms with any injury an injunction might inflict on other parties; and (3) the public interest." Id. (citing Dataphase Systems, Inc. v. C.L. Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc)).

A party may challenge a legislative enactment either facially or as applied to itself only. To succeed on a facial challenge, plaintiffs "would have to establish that no set of circumstances exists under which the ordinance would be valid[.]" Phelps-Roper v. City of Manchester, Mo., 697 F.3d 678, 685 (8th Cir.

2012) (en banc) (internal quotation and citation omitted). "An ordinance may also be invalidated on a facial First Amendment challenge as overbroad if a substantial number of its applications are unconstitutional, judged in relation to its plainly legitimate sweep." Id. (internal quotation and citation omitted). "An as-applied challenge consists of a challenge to the statute's application only as-applied to the party before the court. If an as-applied challenge is successful, the statute may not be applied to the challenger, but is otherwise enforceable." Phelps-Roper v. Ricketts, 867 F.3d 883, 896 (8th Cir. 2017) (internal quotation and citations omitted).

## III.    Analysis

Plaintiffs' motion for summary judgment has two distinct aims. First, they seek a declaration that four City regulations are unconstitutional. (Docket 34 at pp. 6-12). Second, plaintiffs seek summary judgment on the existence and amount of profits they allegedly lost due to the City's unconstitutional permit process. Id. at pp. 12-15. In response, the City argues Mr. Eliason does not have standing to bring any claim, that BHT's move from the area moots one of plaintiffs' claims, that its regulations are not facially unconstitutional, and that there are genuine questions of material fact regarding plaintiffs' damages. (Docket 45 at pp. 15-18, 23-38). The court agrees with plaintiffs on the merits in part, but concludes genuine factual disputes exist regarding damages.

## A.    Eliason's standing

The court first concludes Mr. Eliason has standing to litigate this matter. The City argues Mr. Eliason suffered no injury from the permit denial as 1141 is the entity operating Dick & Jane's.    (Docket 45 at pp. 17-18).    In the City's view, the general rule against shareholders asserting standing on behalf of their corporation bars his claim.    Id. (citing Potthoff v. Morin, 245 F.3d 710, 716-18 (8th Cir. 2001)).    It asserts Mr. Eliason has no claim independent of 1141's claims.    Id.    Plaintiffs respond that Mr. Eliason's injury is distinct from 1141's, establishing his separate standing.    (Docket 52 at pp. 25-26).

"[T]he irreducible constitutional minimum of standing contains three elements."    Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992).

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.    Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.    Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Id. at 560-61 (internal quotations and citations omitted).

> In the First Amendment context, two types of injuries may confer Article III standing to seek prospective relief.    First, [Mr. Eliason] could establish standing by alleging an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.    Second, [Mr. Eliason] can establish standing by alleging that [he] self-censored.

10

<u>Missourians for Fiscal Accountability v. Klahr</u>, 830 F.3d 789, 794 (8th Cir. 2016) (internal citations and quotations omitted). "When a statute is challenged by a party who is a target or object of the statute's prohibitions, there is ordinarily little question that the statute has caused him injury." <u>St. Paul Area Chamber of Commerce v. Gaertner</u>, 439 F.3d 481, 485 (8th Cir. 2006) (internal citation and alteration omitted).

The City's argument does not take into account Mr. Eliason's potential exposure to criminal liability under City regulations. "It is unlawful . . . [f]or any person to own, manage or operate an adult oriented business without a valid . . . license issued by Rapid City[.]"[8] RCMC § 5.70.030(A)(1). The general penalty for violating City regulations is "not less than $1 nor more than $500" in fines "or 30 days in jail, or both." <u>Id.</u> at § 1.12.010. "Each day any violation . . . continues shall constitute a separate offense." <u>Id.</u> The Supreme Court held a statute poses a credible threat of prosecution when it "on its face proscribes" the conduct at issue and where "the [City] has not disavowed any intention of invoking the criminal penalty provision[.]" <u>Babbitt v. United Farm Workers Nat'l. Union</u>, 442 U.S. 289, 302 (1979); <u>see</u> <u>also</u> <u>Gaertner</u>, 439 F.3d at 485-86 (same). Under these regulations, Mr. Eliason could be prosecuted for owning, managing or operating Dick & Jane's in the absence of the court's preliminary

---

[8]City regulation does permit punishing a corporation for code violations but does so "in addition to any punishment provided for its agents who violate . . . while acting as the agents." RCMC § 1.04.120.

injunction. This "credible threat of prosecution" grants Mr. Eliason standing to pursue his First Amendment claims independently of 1141.[9] Klahr, 830 F.3d at 794.

## B.    Mootness

The court next finds plaintiffs' claim that the definition of educational facility found in RCMC § 17.50.186(D)(1)(b) is unconstitutionally vague and has not been mooted. The City asserts BHT's move to a new location mooted the claim.[10] (Docket 45 at pp. 34-35). Plaintiffs respond that BHT's voluntary move does not moot their constitutional claims and that, in any event, their claim for damages would keep the whole case live. (Docket 52 at pp. 2-8).

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (internal quotation omitted). "It is well settled that

---

[9]While violating City regulations concerning the operation of an adult oriented business are punishable criminally, violating the requirement that sexually oriented businesses maintain a conditional use permit appears to be punishable only by a fine. RCMC § 17.54.070. The threat of a fine can chill speech, resulting in an injury sufficient to establish standing for First Amendment purposes. Klahr, 830 F.3d at 794-95. The court alternatively holds the prospect of Mr. Eliason's speech being chilled by a fine for violating the City's sexually oriented business regulations also confers standing.

[10]The City provided no evidentiary support for this factual assertion, but plaintiffs do not contest it. A website appearing to represent BHT—as "Karate for Kids," the company's public name—lists the business at a new location. Buckingham's Karate for Kids, available at https://www.karateforkids.biz/ (last accessed June 26, 2019).

a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 189 (2000) (internal citation omitted).

> In accordance with this principle, the standard [the Supreme Court] ha[s] announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.

<u>Id.</u> (internal quotations and citation omitted).

An initial question might arise regarding whether BHT's conduct in voluntarily moving from Dick & Jane's vicinity can be imputed to the City for purposes of the mootness analysis. The court expresses no view as to whether the term "defendant" used in the Supreme Court case law on this topic encompasses a third party nonlitigant such as BHT. However, a more precise framing of the issue directs the court away from that question. The court must determine whether the City cannot reasonably be expected to apply RCMC § 17.50.186(D)(1)(b) now that BHT has moved from the area. If so, plaintiffs' claim is moot.

The City has not carried its "heavy burden of persuading the court" it will not apply the challenged regulation to plaintiffs in future. <u>Laidlaw</u>, 528 U.S. at 189. The most obvious scenario in which the City could subject plaintiffs to the

regulation, as they point out, is if Dick & Jane's outgrows its current location and searches for another within the City's municipal boundaries. (Docket 52 at pp. 7-8). The City may also attempt to revoke plaintiffs' conditional use permit, requiring plaintiffs to prove their compliance with the sexually oriented business regulations, including the challenged regulation. In either scenario, plaintiffs would be forced to litigate anew the question of the regulation's constitutionality. The court accordingly concludes plaintiffs' claim against § 17.50.186(D)(1)(b) and their request for a permanent injunction are not moot.[11]

### C. First Amendment claims

The court now turns to whether plaintiffs are entitled to a permanent injunction on their constitutional claims and, if so, whether that injunction should be facial or as-applied. Plaintiffs moved for summary judgment on three constitutional claims:

1. Whether RCMC § 17.50.186(E), which requires sexually oriented businesses to obtain a conditional use permit, is an unconstitutional prior restraint on speech. (Docket 34 at pp. 6-11)

2. Whether RCMC §§ 17.54.030(D) & (E), which allow the City to "impose such conditions regarding the location, character or other features of the proposed use . . . as it may deem advisable" upon sexually oriented businesses seeking a conditional use permit and

---

[11]The court understands the City's mootness challenge to apply only to plaintiffs' claim against § 17.50.186(D)(1)(b), because only that section (which defines educational facilities) is affected by BHT's move.

sets forth 12 criteria for determining whether to issue a permit, are unconstitutional prior restraints on speech.[12]  Id.

3.   Whether RCMC § 17.50.186(D)(1)(b) is unconstitutionally vague. Id. at p. 12.

The court concludes plaintiffs are entitled to an as-applied permanent injunction on all three claims and a facial permanent injunction on their first claim.

## 1.   First Amendment legal standards

"The First Amendment provides that the government 'shall make no law . . . abridging the freedom of speech . . . .'  It has long been made applicable to the states, and its protections are at the core of our democratic society."  City of Manchester, 697 F.3d at 686 (quoting U.S. Const. amend I).   "In evaluating the free speech rights of adults, [the Supreme Court] made it perfectly clear that 'sexual expression which is indecent but not obscene is protected by the First Amendment.' "   Reno v. Am. Civil Liberties Union, 521 U.S. 844, 874 (1997) (quoting Sable Commc'ns of Cal., Inc. v. F.C.C., 492 U.S. 115, 126 (1989)). "[E]ven fully nude dancing is expressive conduct entitled to some First Amendment protection."   Blue Moon Entm't., LLC v. City of Bates City, Mo., 441 F.3d 561, 565 (8th Cir. 2006) (citations omitted).

---

[12]The City confusingly asserts that plaintiffs do not challenge the constitutionality of § 17.54.030.   (Docket 45 at pp. 18-23).   However, plaintiffs clearly challenge §§ 17.54.030(D) & (E) as unconstitutional prior restraints on speech in their summary judgment brief.   (Docket 34 at pp. 6-11).   If the City intended to argue that plaintiffs' complaint does not explicitly challenge §§ 17.54.030(D) & (E), the court rejects that argument.    The City cites no authority for the proposition that a plaintiff must challenge all potentially unconstitutional ordinances in its complaint as opposed to its summary judgment briefing.   In any event, § 17.50.186(E), which plaintiffs do explicitly challenge in their complaint, see Docket 1 at ¶ 94, forces sexually oriented businesses to obtain conditional use permits under § 17.54.030.   RCMC § 17.50.186(E).

"If . . . [an] ordinance requires that an individual obtain a license or permit prior to engaging in the protected activity, then the licensing scheme is analyzed as a 'prior restraint' on the activity." Id. "A prior restraint on the exercise of First Amendment rights bears a heavy presumption against its constitutional validity." Douglas v. Brownell, 88 F.3d 1511, 1521 (8th Cir. 1996) (internal quotation omitted). "A licensing scheme generally must provide narrow, objective, and definite standards to guide the licensing authority, may only impose a restraint for a specified and reasonable period, and must provide for prompt judicial review. It must not vest unbridled discretion in the hands of a government official." Blue Moon, 441 F.3d at 565 (internal citations omitted). "[S]tandards can be provided through 'established practice' if absent from the text of the code." Advantage Media, L.L.C. v. City of Eden Prairie, 456 F.3d 793, 804 (8th Cir. 2006) (quoting Forsyth Cty., Ga. v. Nationalist Movement, 505 U.S. 123, 133 (1992)).

## 2. Prior restraint

Plaintiffs argue RCMC §§ 17.50.186(E), 17.54.030(D) & (E) are unconstitutional prior restraints on their free speech rights.[13] (Docket 34 at

---

[13]The court previously concluded plaintiffs are engaging in First Amendment protected speech. (Docket 24 at p. 9). The City has not argued otherwise at any point in this litigation. The United States Court of Appeals for the Eighth Circuit recently questioned whether "selling sexually-oriented devices is speech." Adam & Eve Jonesboro, LLC v. Perrin, 933 F.3d 951, 957 (8th Cir. 2019). The plaintiff in that case "expressly and repeatedly reject[ed]" selling pornographic material such as videos or literature. Id. Here, the parties agree that plaintiffs sell DVDs and magazines "with sexual themes[.]" (Docket 38 at ¶ 3). This is expressive activity protected by the First Amendment. Reno, 521 U.S. at 874; Adam & Eve, 933 F.3d at 957-58 (presuming selling pornographic material, including videos and literature, is expressive conduct protected by the First Amendment).

pp. 6-11).  They specifically assert these regulations unconstitutionally vest unbridled discretion in City officials.[14]  Id.  Section 17.50.186(E) requires sexually oriented businesses to obtain a conditional use permit while § 17.54.030(D) allows City officials to "impose such conditions regarding the location, character or other features of the proposed use . . . as it may deem advisable in the furtherance of the general purposes of this title."  RCMC §§ 17.50.186(E), 17.54.030(D).  Section 17.54.030(E) sets forth 12 criteria City officials must give "due consideration" to while "reviewing applications for a conditional use permit":

1.  The location, character and natural features of the property;

2.  The location, character and design of adjacent buildings;

3.  Proposed fencing, screening and landscaping;

4.  Proposed vegetation, topography and natural drainage;

5.  Proposed pedestrian and vehicular access, circulation and parking, including that related to bicycles and other unpowered vehicles and provisions for handicapped persons;

6.  Existing traffic and traffic to be generated by the proposed use;

7.  Proposed signs and lighting;

8.  The availability of public utilities and services;

_____

[14]Plaintiffs do not argue the City is imposing an unconstitutional time/place/manner restriction on their speech.  See City of Renton v. Playtime Theaters, Inc., 475 U.S. 41, 46-47 (1986).  Like the parties, the court only considers whether City regulations impose an unconstitutional prior restraint on plaintiffs' speech.

17

9.   The objectives of the adopted comprehensive plan and the purpose of the ordinance codified therein;

10.  The overall density, yard, height and other requirements of the zone in which it is located;

11.  The effects of noise, odor, smoke, dust, air and water pollution and the degree of control through the use of clarifiers, setbacks and orientation; and

12.  The degree to which conditions imposed will mitigate any probable adverse impacts of the proposed use on existing adjacent uses.

RCMC § 17.54.030(E).

The City does not dispute these sections of its municipal code constitute prior restraints on plaintiffs' First Amendment rights.   (Docket 45 at p. 23). Instead, the City argues the prior restraints are not unconstitutional.   Id. at pp. 25-33.   The City specifically argues:

1.   Its regulations provide "narrow, objective, and definite standards to guide" licensing officials, avoiding the problem of "unbridled discretion[.]"   Blue Moon, 441 F.3d at 565; Docket 45 at pp. 31-33.

2.   City officials' established practice is to promptly resolve conditional use applications.   City officials therefore "only impose a restraint for a specified and reasonable time[.]" Blue Moon, 441 F.3d at 565; Docket 45 at pp. 29-31.

3.   South Dakota law provides for "prompt judicial review" of City permitting decisions.   Blue Moon, 441 F.3d at 565; Docket 45 at p. 29.

The court finds City regulations do not provide sufficiently narrow, objective, and definite standards to guide permitting authorities.   Accordingly, it holds

18

§§ 17.50.186(E), 17.54.030(D) & (E) are unconstitutional prior restraints on plaintiffs' speech without reaching the City's second and third arguments.

The regulations purporting to guide City licensing officials in determining whether to grant a conditional use permit to a sexually oriented business are not narrow, objective, or definite. On their face, these regulations permit City officials to deny conditional use permits based on indeterminate factors such as the proposed business' location and character, the "location, character and design" of buildings adjacent to the proposed business, the "proposed, vegetation, topography and natural drainage" of the proposed business' property, and "existing traffic and [the] traffic to be generated" by the proposed business. RCMC § 17.54.030(E). Furthermore, City officials are empowered to require proposed sexually oriented businesses to comply with *any* "conditions regarding the location, character or other features of the proposed" business before receiving a permit. Id. at § 17.54.030(D).

The City does not assert any textual restrictions exist on its ability to deny a conditional use permit under these regulations. Nor does the court perceive any. As some examples of the unbounded latitude granted to City officials, it appears the City can deny a sexually oriented business' conditional use permit because:

1.  The business' "character" is lacking. Id. at § 17.54.030(E)(1). (Character does not appear to be defined, nor does the ordinance explain how the City is to determine when a sexually oriented business' character merits denial of a permit.)

2.   The buildings adjacent to the business have an incompatible character.   Id. at § 17.54.030(E)(2).   (No standards are given to evaluate the compatibility of neighboring buildings.)

3.   The business' vegetation is unsatisfactory.   Id. at § 17.54.030(E)(4).   (The City does not explain under what circumstances a sexually oriented business' vegetation might not be up to code.)

4.   The traffic generated by the business is in some way objectionable.   Id. at § 17.54.030(E)(6).   (Could the City deny a permit because a sexually oriented business generates additional traffic?   Or because it could depress local traffic? The court cannot say.)[15]

Additionally, the City is permitted to impose "such conditions regarding the location, character or other features of the proposed use . . . as it may deem advisable in the furtherance of the general purposes of this title."   Id. at § 17.54.030(D).   This grant of authority certainly cannot be described as "narrow, definite and objective[.]"   Blue Moon, 441 F.3d at 565.

The "unbridled discretion," see id., to deny a conditional use permit to a sexually oriented business under § 17.54.030 is evident when compared to the situation before the Supreme Court in City of Littleton.   City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C., 541 U.S. 774 (2004).   In that case, an adult bookstore brought a facial challenge to a city licensing scheme.   Id. at 776.   The ordinance required the city to deny a license:

_____

[15]The court appreciates that these regulations are important regulatory and zoning tools.   The City, of course, has broad authority to regulate land use through zoning.   Vill. of Belle Terre v. Boraas, 416 U.S. 1 (1974).   Nevertheless, this substantial discretion must be limited as applied to constitutionally protected land uses, such as sexually oriented businesses, to comply with the First Amendment.

> [I]f the applicant (1) is underage; (2) provides false information; (3) has within the prior year had an adult business license revoked or suspended; (4) has operated an adult business determined to be a state law "public nuisance" within the prior year; (5) (if a corporation) is not authorized to do business in the State; (6) has not timely paid taxes, fees, fines, or penalties; (7) has not obtained a sales tax license . . . ; or (8) has been convicted of certain crimes within the prior five years.

Id. at 783.   The Court described these factors as "reasonably objective, nondiscretionary criteria unrelated to the content of the expressive materials that an adult business may sell or display."   Id.   Each factor had a simple, easily determined yes or no answer.   By contrast, the factors in § 17.54.030(E) are neither objective nor nondiscretionary.   Some, like the factors asking the City to evaluate a sexually oriented business' character, invite the City to consider the sexually expressive nature of the business.   Even the factors that are facially unrelated to constitutionally protected expression are easily capable of serving as pretext for a City predisposed to deny necessary permits to a sexually oriented business.   In short, "[n]othing in the law or its application prevents the official from encouraging some views and discouraging others through the arbitrary application" of §§ 17.54.030(D) & (E).   Forsyth Cty., 505 U.S. at 133.

The City, relying on the affidavit of planning official Vicki Fisher, argues that § 17.54.030 only provides "some discretion" to City officials, as opposed to "unbridled discretion[.]"   (Docket 45 at pp. 32-33).   Ms. Fisher stated in her affidavit that, during her 23 years of employment with the City,

21

it has been the established practice . . . to restrict any conditions placed on the grant of a Conditional Use Permit to only those restrictions necessary to ensure that the proposed use does not adversely impact existing adjacent users, or otherwise to mitigate . . . possible adverse impacts. I have not seen any Conditional Use Permit conditions passed by the Planning Commission which do not relate to the proposed use's impact on existing adjacent users, or which otherwise allow for the personal opinions of [City planning officials] to be used to deny a Conditional Use Permit.

(Docket 43 at ¶ 7). The record certainly confirms that City planning officials did not inject their personal biases into the permitting processes in this case. See Docket 41-7 at pp. 6-8 (Planning Commission members expressing personal opposition to Dick & Jane's, but recognizing their lack of discretion in granting a permit).

However, "[a]ny person or party" can appeal Planning Commission decisions concerning conditional use permits to the Rapid City Common Council. RCMC § 17.54.030(F). As this case demonstrates, the Common Council is very capable of relying on their personal biases and religious beliefs to deny a conditional use permit to a sexually oriented business on the basis of the message conveyed by its merchandise. See supra Section I (describing the Common Council denying Dick & Jane's permit, in part, because of religious and moral opposition to sexually oriented businesses); see also Docket 24 at pp. 12-21 (court's prior findings to the same effect). However true it may be that City planning officials' established practice is to evaluate sexually oriented businesses' conditional use permit applications neutrally, the court cannot conclude the City as a whole has an established practice of applying its

22

regulations in a "narrow, definite and objective" manner.   Blue Moon, 441 F.3d at 565.   The recent actions of the Common Council contradict the City's present argument.[16]

In addition, "the success of a facial challenge on the grounds that an ordinance delegates overly broad discretion to the decisionmaker rests not on whether the administrator has exercised his discretion in a content-based manner, but whether there is anything in the ordinance preventing him from doing so."   Forsyth Cty., 505 U.S. at 133 n.10.   "[T]he mere existence of the licensor's unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own speech, even if the discretion and power are never actually abused."   City of Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 757 (1988).   Even were it the case that the City presented an issue of genuine material fact regarding its established practice in evaluating permits for sexually oriented businesses, the broad discretion afforded by §§ 17.54.030(D) & (E) is dispositive.   "The First Amendment prohibits the vesting of such unbridled discretion in a government official."   Forsyth Cty., 505 U.S. at 133.

---

[16]The City argues the Common Council denied the conditional use permit because of Dick & Jane's location, not because of any § 17.54.030 factor. (Docket 45 at p. 33).   That is because BHT appealed the Planning Commission's permit decision on the basis of Dick & Jane's location.   (Docket 37-7 at pp. 2-6). Given the sentiments members of the Common Council expressed before denying the permit, the court concludes they would have denied the permit had a challenger appealed on the basis of a § 17.54.030 factor.

The cases cited by the City do not compel a different outcome.   The City first cites Jake's Ltd., Inc. v. City of Coates for the proposition that "an ordinance authorizing [license] revocation if the licensee is a menace to the health, safety, or general welfare of the community [does not] confer[] unbridled discretion." (Docket 45 at pp. 29-30) (quoting 284 F.3d 884, 890 (8th Cir. 2002)).   The Eighth Circuit noted such an ordinance would be "a specific discretion-limiting standard not unlike the definition of a public nuisance long known to the law." Jake's, 284 F.3d at 890.   Here, as plaintiffs point out, the court is not concerned with an ordinance authorizing revocation of a previously issued license.   In Jake's, the Eighth Circuit noted "the proposition that the prior restraint standards . . . apply equally to license suspensions and revocations . . . is inherently suspect, because license revocation is necessarily less of a *prior* restraint than the initial licensing process."   Id. (emphasis in original).   The question before the court is the constitutionality of "the initial licensing process[,]" which, as an undisputed prior restraint, is subject to much more exacting scrutiny than the Eighth Circuit applied in Jake's.   Id.; see also Brownell, 88 F.3d at 1521 ("A prior restraint on the exercise of First Amendment rights bears a heavy presumption against its constitutional validity.") (internal quotation omitted).

Second, the City relies on Advantage Media, L.L.C. v. City of Eden Prairie. (Docket 45 at pp. 32-33).   In Advantage Media, the Eighth Circuit held a city ordinance allowing city officials "to request other information . . . relat[ing] to the

24

kind, size, material, construction, and location of . . . proposed signs" did not give

city officials unbridled discretion.   456 F.3d at 804.   The signs at issue were

denied a necessary permit for lack of compliance with city ordinance.   Id.   The

Eighth Circuit found it significant that a city official stated he "did not have the

power to deny applications which complied with the sign code."   Id.   The

ordinance here does not just permit City officials to request information.   It

allows them to deny a necessary permit to a sexually oriented business on the

basis of amorphous, undefined factors.   In addition, the Common Council has

the power to deny permit applications in compliance with City regulations on an

expansive basis, as shown by its actions in this matter.   (Docket 24 at

pp. 12-21).   Advantage Media does not support the City's case.

   Because the court concludes City regulations do not provide "narrow,

objective, and definite standards to guide" City licensing officials, it need not

reach the City's other two arguments.[17]   Blue Moon, 441 F.3d at 565.   Sections

17.50.186(E), 17.54.030(D) & (E) of the Rapid City Municipal Code violate the

First Amendment as prior restraints on plaintiffs' constitutionally protected

speech.   Summary judgment is granted to plaintiffs on these claims.   The court

considers appropriate remedies below.   See infra Sections III.C.4-5.

---

[17]The court does note the City is correct to argue prompt judicial review of
City permitting decisions is available in South Dakota state courts.   See M.G.
Oil Co. v. City of Rapid City, 793 N.W.2d 816 (2011).   Plaintiffs concede this
argument.   (Docket 52 at p. 14).   But "[e]ven if judicial review were relatively
speedy, such review cannot substitute for concrete standards to guide the
decision-maker's discretion."   City of Lakewood, 486 U.S. at 771.   The court
expresses no opinion regarding the City's second argument, that its established
practice is to make permitting decisions promptly.

### 3.    Vagueness

In a single paragraph, plaintiffs assert § 17.50.186(D)(1)(b) is unconstitutionally vague.   (Docket 34 at p. 12).   They adopt the court's reasoning in its preliminary injunction order.   <u>See</u> Docket 24 at pp. 21-25.   The City argues plaintiffs' vagueness challenge is moot because BHT moved out of Dick & Jane's vicinity.   (Docket 45 at pp. 34-35).   The court rejected that argument.   <u>See</u> <u>supra</u> Section III.B.   The City's only other response is to incorporate the arguments it made against plaintiffs' vagueness challenge during the preliminary injunction litigation.   (Docket 45 at p. 35).   The court previously rejected those arguments.   (Docket 24 at pp. 21-25).

Aside from the City's rejected mootness argument, neither party attempts to challenge the court's prior vagueness holding with new factual or legal arguments.   The court sees no reason to reconsider its earlier ruling. Accordingly, summary judgment is granted to plaintiffs on their vagueness claim.

### 4.    Permanent injunction

Plaintiffs succeeded on the merits of their constitutional claims.   Before granting a permanent injunction, the court must weigh three factors: "(1) the threat of irreparable harm to the moving party; (2) the balance of harms with any injury an injunction might inflict on other parties; and (3) the public interest." <u>C & W Enters.</u>, 542 F.3d at 229.   Plaintiffs rely upon the court's reasoning with respect to these factors in granting a permanent injunction.   (Docket 34 at

pp. 15-16).   The City provides no new argument on these factors aside from its rejected mootness contention, but instead resorts to its previously rejected briefing from the preliminary injunction stage.   (Docket 45 at pp. 38-39).

The remaining three factors weigh in favor of granting a permanent injunction.   "It is well-established that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.' "   Powell v. Noble, 798 F.3d 690, 702 (8th Cir. 2015) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)).   "The balance of equities . . . generally favors the constitutionally-protected freedom of expression."   Phelps-Roper v. Nixon, 545 F.3d 685, 690 (8th Cir. 2008), overruled on other grounds by Phelps-Roper v. City of Manchester, Mo., 697 F.3d 678, 686 (8th Cir. 2012).   "Likewise, the determination of where the public interest lies also is dependent on the determination of the likelihood of success on the merits of the First Amendment challenge because it is always in the public interest to protect constitutional rights."   Id.   As plaintiffs established the City deprived them of their First Amendment right to freedom of speech, it is unsurprising that the other three factors weigh in favor of a permanent injunction to halt the City's unconstitutional activity.   Plaintiffs are entitled to a permanent injunction on each of their constitutional claims.

### 5.   Facial or as-applied injunction

Plaintiffs ask the court to declare that §§ 17.50.186(E), 17.54.030(D) & (E) are facially unconstitutional and strike them down.   (Docket 34 at pp. 6-12).

They only ask the court to find § 17.50.186(D)(1)(b) unconstitutional as applied to them.  Id. at p. 12.   The City did not argue whether a facial or as-applied injunction would be appropriate.

The court concludes § 17.50.186(E) is facially unconstitutional.   This regulation requires all sexually oriented businesses to obtain a conditional use permit under the process set forth in § 17.54.030.   As defined by City regulations, all sexually oriented businesses are entitled to First Amendment protections.   See RCMC §§ 17.50.186(B)(1)-(8) (defining sexually oriented business as entities selling sexually-themed books, films, and live viewing of nude performances); Sable Commc'ns, 492 U.S. at 126 ("Sexual expression which is indecent but not obscene is protected by the First Amendment[.]"); Blue Moon, 441 F.3d at 565 ("[E]ven fully nude dancing is expressive conduct entitled to some First Amendment protection.").   Section 17.50.186(E)'s sole effect is to subject the constitutionally protected expression of sexually oriented businesses to an unconstitutional prior restraint through the conditional use permitting process.   See supra Section III.C.2.   Because "no set of circumstances exists under which [§ 17.54.030(E)] would be valid," the court must strike down this ordinance.   City of Manchester, 697 F.3d at 685 (internal quotation and citation omitted).   Section 17.50.186(E) facially violates the First Amendment and cannot stand.

However, §§ 17.54.030(D) & (E)—the criteria the City must use to determine whether to issue a conditional use permit—do not apply solely to

28

sexually oriented businesses. Section 17.54.030 as a whole creates generally applicable procedures which the City follows to issue conditional use permits to a host of land uses. See, e.g., RCMC § 17.10.030 (requiring schools, golf courses, utility substations, etc., to obtain a conditional use permit under § 17.54.030 if located in a low-density residential zone). The court would overstep its boundaries in facially invalidating ordinances that apply to land uses outside the purview of the First Amendment.

Plaintiffs' request the court enjoin application of §§ 17.54.030(D) & (E) to any business protected by the First Amendment would result in a practically unmanageable injunction. It is clear that all sexually oriented businesses, as that term is defined by the City, enjoy First Amendment protection and striking down § 17.50.186(E) protects them from the unconstitutional prior restraints created by §§ 17.54.030(D) & (E). But determining whether other types of land uses are entitled to similar relief would not be a simple task. The court declines to force the City to determine whether any entity seeking a conditional use permit is protected by the First Amendment before issuing a permit. The court will enjoin §§ 17.54.030(D) & (E) only as they apply to plaintiffs.

Finally, plaintiffs only ask the court to enjoin § 17.50.186(D)(1)(b) as it applies to them. The court previously held plaintiffs are entitled to summary judgment and a permanent injunction on their claim that § 17.50.186(D)(1)(b) is unconstitutionally vague as applied to them. See supra Sections III.C.3-4. The court will enjoin § 17.50.186(D)(1)(b) as it applies to plaintiffs.

The court's ruling does not mean the City is unable to regulate sexually oriented businesses. Plaintiffs do not challenge the City's location requirements for sexually oriented businesses as a whole and they are unaffected by this order. RCMC § 17.50.186(D). Nor are the adult oriented business regulations—which are far more detailed than the sexually oriented business regulations—affected. Id. at § 5.70. And, of course, the City is free to enact new ordinances that do not violate the First Amendment.[18]

## D. Damages

Plaintiffs claim they are entitled to $237,888 in damages for the lost profits they would have made had they not been forced to undergo the unconstitutional conditional use permitting process. (Docket 34 at pp. 12-15). They ask the court to enter summary judgment in that amount. The City attacks plaintiffs' damages claim on two grounds. First, the City argues plaintiffs could not have opened for business by their claimed dates, regardless of the permitting process. (Docket 45 at pp. 10-15). Second, it argues questions of fact exist regarding the amount of lost profits. Id. at pp. 35-38. The court finds both of the City's arguments preclude summary judgment.

As an initial matter, the court concludes plaintiffs' lost profits are an appropriate measure of damages. "[W]hen § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts." Memphis Cmty.

---

[18]The court expresses no view on ordinances not at issue in this case.

<u>School Dist. v. Stachura</u>, 477 U.S. 299, 306 (1986). "[D]amages in tort cases are designed to provide compensation for the injury caused to plaintiff by defendant's breach of duty. . . . To that end, compensatory damages may include . . . out-of-pocket loss and other monetary harms[.]" <u>Id.</u> at 306-07 (internal quotations and citations omitted). "Generally, compensatory damages should attempt to place the plaintiff in a position similar to the one she or he would have been in had the violation not occurred." <u>Cunningham v. City of Overland, State of Mo.</u>, 804 F.2d 1066, 1069 (8th Cir. 1986), <u>abrogated on other grounds by Lemke v. Cass Cty., Neb.</u>, 846 F.2d 469, 470-71 (8th Cir. 1987) (en banc). Under these standards, lost profits can serve as a measure of the compensatory damages caused by the City's deprivation of plaintiffs' First Amendment rights.

### 1. Opening date

Plaintiffs assert they could have opened Dick & Jane's by May 14, 2017, had they not been subjected to the unconstitutional conditional use permitting process. (Docket 38 at ¶ 39). Mr. Eliason asserts he would have leased his current space at 1141 Deadwood Avenue on April 7 and would have "immediately begun the process of building out the space and stocking the store with inventory."[19] (Docket 31 at ¶ 21). In response, the City notes plaintiffs

---

[19]Mr. Eliason's affidavit frequently confuses the years in which events took place. <u>See</u>, <u>e.g.</u>, Docket 31 at ¶¶ 20, 21 (stating the lease could have been signed and Dick & Jane's opened in April and May of 2018, not 2017). Given the well-established timeline in this case, the court will overlook these presumably typographical errors.

and the landlord at 1141 Deadwood Avenue were negotiating the lease into August of 2017. (Docket 45 at pp. 10-11).[20] The City also asserts the buildout process continued through at least December of 2017. Id. at pp. 12-13. Finally, the City notes plaintiffs did not apply for the necessary adult oriented business license until February 9, 2018. Id. at p. 14. The City supports these factual assertions with e-mails between Mr. Eliason and the landlord, contractor invoices, and company records. See Docket 44 at pp. 19-24 (citing Dockets 41-14 – 41-29). In their reply brief, plaintiffs argue they would have more aggressively negotiated the lease and completed the buildout if they had not been litigating the conditional use permit. (Docket 52 at pp. 20-21).

The date by which Dick & Jane's could have opened is material for purposes of determining plaintiffs' lost profits. Anderson, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment."). Given the City's supported factual assertions, the court concludes a reasonable jury could determine that Dick & Jane's could not have opened on May 14, 2017. A jury is also the appropriate body to determine whether plaintiffs would or could have completed necessary pre-opening tasks quickly enough to open on May 14. The court cannot grant summary judgment on this factual matter.

---

[20]The City's factual assertions in their damages briefing rely on statements of material facts that plaintiffs did not challenge. See Docket 44 at pp. 17-29. While the court is able to consider these uncontested facts as true, Fed. R. Civ. P. 56(e)(2), it will instead accord them weight as justified by the supporting record evidence.

## 2.    Amount of lost profits

The court likewise cannot grant summary judgment on the amount of lost profits.   The court's inability to determine the length of time plaintiffs were accruing lost profits is an obvious impediment on this point.   The City also identifies several significant omissions in plaintiffs' profit calculations.   It notes, for example, that plaintiffs did not include $88,222.12 of buildout expenses, health insurance or mandatory workers compensation insurance in their profit calculations.[21]   (Docket 45 at pp. 37-38).   The City also argues plaintiffs shifted some costs from Dick & Jane's books to Mr. Eliason's similar store in Sturgis, South Dakota.   Id.

The court finds a reasonable jury could accept the City's arguments and conclude plaintiffs are entitled to less than their claimed damages.   The City thus raised genuine questions of material fact sufficient to survive summary judgment as to the amount of plaintiffs' lost profits.   The court must deny summary judgment to plaintiffs on this point.

## IV.   Conclusion

Plaintiffs succeeded in showing that RCMC §§ 17.50.186(E), 17.54.030(D) & (E) are unconstitutional prior restraints on speech in violation of the First Amendment.   Plaintiffs also succeeded in showing that RCMC § 17.50.186(D)(1)(b) is unconstitutionally vague.   The court permanently

---

[21]Plaintiffs argue they did not include buildout costs in their profitability analysis because they would have had to pay those costs regardless of when Dick & Jane's opened.   (Docket 52 at p. 25).   Plaintiffs do not appear to contest the lack of health and workers compensation insurance in their profit calculations.

enjoins the City from enforcing any of these ordinances against plaintiffs. The court also permanently enjoins the City from enforcing § 17.50.186(E) in any instance because it facially violates the First Amendment. Summary judgment is granted to plaintiffs on their constitutional claims. However, genuine questions of material fact exist as to the amount of plaintiffs' claimed damages. Summary judgment is denied as to plaintiffs' damages claim.

**ORDER**

For these reasons, it is

ORDERED that plaintiffs' motion for summary judgment (Docket 33) is granted in part and denied in part as described above.

IT IS FURTHER ORDERED that the City of Rapid City, as well as its agents and employees, are immediately and permanently enjoined from enforcing RCMC §§ 17.50.186(D)(1)(b), (E), 17.54.030(D) & (E) against plaintiffs.

IT IS FURTHER ORDERED that the City of Rapid City, as well as its agents and employees, are immediately and permanently enjoined from enforcing RCMC § 17.50.186(E) in any respect against any person or entity.

IT IS FURTHER ORDERED that the parties shall confer regarding a trial to determine plaintiffs' damages and shall contact the court on or before **November 29, 2019**, to schedule the trial.

Dated September 30, 2019.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE